PER CURIAM.
This disciplinary proceeding against Mark Orr is before us on complaint of The Florida Bar and the referee’s report. The referee recommends that Orr be publicly reprimanded. Orr petitions this Court for review, contesting the recommended discipline as excessively harsh. We have jurisdiction. Art. V, § 15, Fla. Const.
The referee made the following findings and recommendations:
II. Findings of Fact as to Each Item of Misconduct of which the Respondent is charged: The parties entered into an extensive pre-hearing stipulation which greatly reduced the areas of factual dispute. After considering all of the pleadings and evidence before me, pertinent portions of which [are] commented upon below, I find that the respondent is and at all times material was a member of The Florida Bar and subject to the jurisdiction and discipli *754 nary rules of The Supreme Court of Florida. He resided and practiced law in St. Lucie County, Florida. He also practiced in Martin County.
As to Count I
1. On October 20, 1982, the respondent was retained by Eileen Carbia to assist her stepson, Enrique Carbia, who had just been sentenced to three years incarceration for the sale and delivery of cocaine and one year for the attempted possession of cocaine, to be served concurrently in Case 82-421 in the Ninth Judicial Circuit. Respondent was paid a total fee of two thousand dollars ($2,000).
2. There was no written employment agreement between the respondent and the Carbias or between the respondent and Enrique Carbia. During the initial visit, Mrs. Carbia and respondent discussed her most immediate desire for arranging for Enrique’s release from jail as soon as possible. The respondent indicated that he was familiar with the Judge and the Assistant State Attorney involved and he knew of a bondsman who would be able to assist in arranging bail. The respondent further discussed with Mrs. Carbia the possible issue of incompetent representation for further relief and pursuit of a reduction of the sentence.
3. Enrique Carbia was committed to a state prison facility by order dated October 22, 1982. A few days later the respondent filed a Notice of Appeal dated October 25, 1982 and an amended Notice of Appeal on October 29, 1982. He filed a Motion to set Super-sedeas Bond dated October 28, 1982 along with the bond and did succeed in having bond set through agreement with the State and the son released.
4. During his initial conversations, the respondent advised the Carbias not to be surprised by the passage of a long period of time before the matter was concluded and that it could take anywhere from six months to three years for the appellate court to conclude it.
5. The family and defendant believe respondent agreed to prosecute a full appeal whereas the latter asserts he understood he was only to file a Notice of Appeal to buy his client time. I do note respondent’s December 20, 1982 letter to the client states in part an appeal but more fully supports respondent’s version. It also mentions further possible post conviction relief under Rule 3.850_
6. Respondent filed nothing further with respect to the Notice of Appeal and on May 4, 1983 the Fourth District Court of Appeals entered an order dismissing the case for lack of prosecution. Respondent received the dismissal order in May 1983 but did not notify either the defendant or his family.
7. Some months earlier respondent had met with Enrique Carbia and advised him it was permissible to leave the state and be married which he did in 1983 when he moved to New York State. Contact basically was to be through the Carbias locally.
8. The appellate court’s Order of Dismissal was finally brought to the attention of the trial court in April, 1985. This set in motion a chain of events resulting in Enrique Carbia’s surrender and a dispute between Mrs. Carbia and the respondent over what had happened and what he had agreed to do.
9. Respondent asserts he'was waiting for the trial court’s commitment order before notifying either his client or the family that Enrique Carbia would have to put his affairs in order to be ready to begin his sentence. He anticipated the trial court’s commitment order would be coming within a reasonable period of time. However, the matter languished for almost two years. I find the respondent had a duty to notify his client either directly or through his family of the appellate court’s order dismissing the “appeal” so that his client could get his affairs in order and take whatever further *755 legal actions which may have been available.
10. In this instance, due to the confusion which resulted following the trial court’s April 1985 commitment order and Mr. Carbia’s surrender a couple of weeks later, Mrs. Carbia got into a dispute with respondent, severed their relationship and requested a refund.
11. It is apparent that there was a material misunderstanding between the respondent and the Carbias over exactly what he had agreed to do in their behalf. In part, this arose due to lack of a written contract with the Carbias. Although the December 20 1982 letter persuades me respondent had agreed only to file a Notice of Appeal and secure the client’s release for an indeterminate period of time, the letter also talks of an appeal and probably contributed to the obvious material misunderstanding between the Carbias and himself.
As to Count II
12. After filing a Notice of Appeal, the respondent filed a Motion to Set Supersedeas Bond as well as the bond on behalf of Enrique Carbia on October 28, 1982 alleging he was entitled to an appeal bond and requesting issuance of an appeal bond, respondent filed the motion although he believed nothing could be done in the way of an appeal because his client had entered the plea of nolo contendere failing to reserve any right of appeal. Respondent testified he filed the motion before he had reviewed the court file in this matter although he had talked to Mr. and Mrs. Carbia.
13. Paragraph two of the motion states, “That Defendant is entitled to an appeal bond.” The motion was filed contrary to the provisions of The Florida Rules of Criminal Procedure, Rule 3.691 in that the appeal was not taken in good faith on grounds fairly debatable and not frivolous. Accordingly, respondent’s client was not eligible for bail at the time the motion was filed since there were no grounds upon which to take an appeal....
III. Recommendations as to whether or not the Respondent should be found guilty: As to each count of the complaint, I make the following recommendations as to guilt or innocence:
As to Count I
I recommend that the respondent be found guilty and specifically that he be found guilty of violating Disciplinary Rule 6-101(A)(3) for neglecting a legal matter entrusted to him for his failure to notify either the family or the client in a timely fashion of the appellate court’s May 4, 1983 order dismissing the case for want of prosecution. I further recommend the respondent be found not guilty of ... violating Disciplinary Rule 1-102(A)(6) for engaging in other misconduct reflecting adversely on his fitness to practice law.
As to Count II
Respondent pled guilty to Count II. Therefore, I recommend the respondent be found guilty and specifically he be found guilty of violating the following Disciplinary Rules of The Florida Bar’s Code of Professional Responsibility: 1-102(A)(5) for engaging in conduct prejudicial to the administration of justice, 1-102(A)(6) for engaging in other misconduct reflecting adversely on his fitness to practice law, and 7-102(A)(2) for knowingly advancing a claim or defense that is unwarranted under existing law and not supported by good faith argument. Specifically, these violations are due to his filing the Motion to Set a Supersedeas Bond alleging his client was entitled to an appeal bond and requesting the issuance of same when in fact the respondent knew there were no grounds upon which to take the appeal. Said motion violated the provisions of The Florida Rules of Criminal Procedure, Rule 3.691 in that the appeal was not taken in good faith on ground fairly debatable and not frivolous.
*756 IV. Recommendation as to Disciplinary measures to be applied: I recommend that the respondent receive a public reprimand to be administered by personal appearance before the Board of Governors of The Florida Bar as provided in Rule 11.10(3).
Orr argues that the recommended public reprimand is excessive. In support thereof, he cites several decisions wherein this Court imposed a public reprimand for disciplinary violations more aggravated than the violations found in the instant case. A public reprimand, however, is not inappropriate in the instant case simply because it has been applied in more egregious situations.
Orr argues that a public reprimand is harsh because his disciplinary violations resulted in part from his overzealous representation and “a material misunderstanding as to the function of the attorney,” rather than from any fraudulent intent. Further, since he has no prior history of disciplinary violations and was not required to pass a legal ethics course for law school graduation, he suggests that a private reprimand before the Board of Governors and the completion of a legal ethics paper are more appropriate forms of discipline. We disagree. Public reprimand is an appropriate discipline for isolated instances of neglect or lapses of judgment. The Florida Bar v. Welty, 382 So.2d 1220 (Fla.1980). More than neglect is involved in the instant case. Orr affirmatively asserted by motion to the court that his client was entitled to an appeal bond, believing that no grounds for such appeal existed and intending no further action. We agree with the referee that the members of The Florida Bar should be advised that such conduct constitutes a breach of ethics.
We adopt the referee’s findings of fact and recommended discipline, and Orr is directed to appear before the board, at a time and place set by the board, to receive a public reprimand. Judgment for costs in the amount of $1,368.35 is hereby entered against the respondent, for which sum let execution issue.
It is so ordered.
MCDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.