# Supreme Court of Florida

———————

No. SC2023-0416

———————

**THE FLORIDA BAR,**
Complainant,

vs.

**DANIELLE RENEE WATSON,**
Respondent.

March 13, 2025

PER CURIAM.

The Bar seeks review of an amended referee's report recommending that Respondent, attorney Danielle Renee Watson, be found guilty of professional misconduct and receive an admonishment for minor misconduct.[1] As discussed below, we approve the referee's findings of fact and recommendations as to guilt. However, we disapprove in part the findings in aggravation and mitigation, and we disapprove the referee's finding that Watson's conduct constitutes minor misconduct and the

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

recommendation that she receive an admonishment.  Instead, we suspend Watson from the practice of law for 91 days.

## I.  BACKGROUND

The Florida Bar filed a one-count complaint against Watson, alleging violations of Rules Regulating The Florida Bar 4-8.4(a) ("A lawyer shall not violate or attempt to violate the Rules of Professional Conduct . . . .") and 4-8.4(d) ("A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis . . . .").  The complaint was based upon Watson's conduct in a federal employment discrimination case filed in the United States District Court for the Southern District of Florida, *Parish-Carter v. Avossa*, case number 9:16-CV-81623 (*Parish-Carter*).  Watson was co-counsel in that case on behalf of the plaintiff with her law partner, Malik Leigh, whose related misconduct and other misconduct was also referred to the Bar.  *See Fla. Bar v. Leigh*, No. SC2023-0518 (Fla. Mar. 13, 2025).

Watson's misconduct arose from interactions pertaining to a pretrial stipulation the parties were required to submit. Leigh and Lisa Kohring, opposing counsel for the School Board of Palm Beach County—one of the defendants in *Parish-Carter*—were working on the joint stipulation. On the day the stipulation was due, Leigh and Kohring had exchanged numerous e-mails with several drafts of the document. Watson was not involved in the drafting of the stipulation but was copied on the e-mail exchanges. Ultimately, Leigh replied to Kohring's last e-mail, copying Watson, Ana Jordan (paralegal to Kohring), and Shawntoyia Bernard (general counsel for the School Board), attaching a copy of a pretrial stipulation with his signature affixed and stating in the body of the e-mail: "Pretrial Stipulation to sign and file." Leigh did not explain in the e-mail that he had made additional changes to the draft stipulation last sent by Kohring or that he had signed the document. Shortly after receipt and without reviewing Leigh's attachment, Jordan filed a pretrial stipulation that was not the version e-mailed by Leigh, and which contained an electronic signature purportedly by Watson.

After Leigh realized the stipulation that was filed was different from the version he had e-mailed, he contacted Watson and learned

that she had not authorized the filed stipulation. Because it was after normal business hours and Leigh knew Kohring had left the office for the day, Leigh filed his own version of the stipulation in an addendum with Watson's name in the signature block, expressly accusing Kohring of forging Watson's electronic signature. This filing, which was titled "Joint PreTrial Stipulation Addendum," contained the following statement:

> [T]he Joint Pre-trial Stipulation [DE 71] by the Defendant's Counsel, Lisa Kohring, not only filed the wrong Pre-trial Stipulation, but she forged Plaintiff Counsel, Danielle Watson's electronic signature and filed it. The Actual "agreed" or "joint" stipulation which was submitted with Attorney, Malik Leigh, Esq's endorsement and submitted to Defense counsel [f]or filing is attached herein without Defense Counsel's Signature. Counsel will follow up with an official Motion regarding this action.

The following morning, Watson and Leigh ignored Kohring's e-mails and calls. Kohring had reviewed the pretrial stipulation and addendum and had requested by e-mail that Watson and Leigh retract the statements in the addendum. After receiving no response, Kohring again e-mailed Watson and Leigh, stating that she had tried calling twice and warning that she may seek sanctions. Leigh replied to Kohring's last e-mail, claiming that

Kohring "forged" Watson's electronic signature and could be subject to sanctions or criminal penalties based on her office affixing Watson's signature to the stipulation without authorization.

Kohring filed a motion for sanctions, naming only Leigh. Shortly thereafter, Leigh, with Watson's name in the signature block, filed a motion for sanctions against defendants and their counsel. Both motions were denied without prejudice. After the federal district court entered summary judgment for the School Board, the parties filed renewed motions for sanctions, as well as responsive pleadings. The district court directed Watson to file a personal response after co-counsel Leigh filed a response on behalf of their client with both attorneys' names in the signature block. Both responses repeated the allegation that Kohring had forged Watson's electronic signature. The district court, in reviewing the dueling motions and responses, stated in pertinent part as follows:

> The Court concludes that Ms. Kohring and Ms. Jordan: (i) acted with no improper purpose, (ii) acted honestly, professionally, and fairly, and (iii) are not liable for any of the charges and allegations levied against them by Plaintiff's counsel.
>      . . . .
>      . . . Plaintiff's counsel's behavior was completely unfounded and in contravention of all of the tenets of professionalism encapsulated in the Federal and Local

> Rules. The pretrial stipulation issue could have been resolved quickly between the parties if Mr. Leigh or Ms. Watson had simply called or e-mailed Defendants. . . .
>
> . . . .
>
> Instead of working with Defendants to clear up a simple communication which resulted in no prejudice to their client, Mr. Leigh and Ms. Watson, acting in concert, purposefully chose not to communicate with Defendants and instead filed a unilateral pretrial stipulation, a bar complaint, a motion to strike for sanctions, and called law enforcement in connection with their allegations of the crime of forgery.

The trial judge thus found that Watson and her co-counsel acted in bad faith and granted Kohring's motion for sanctions, providing that both Watson and Leigh were jointly responsible for paying the defendants' attorneys' fees.

Before the referee in these proceedings, Kohring testified at the final hearing that she was "very upset" about the addendum and the e-mail in which Leigh advised that he and Watson had called the court and the Marshal's Service. Kohring further testified that "it was just outrageous and very upsetting, very scary." She also characterized the allegation of committing a crime as "traumatizing" and that it caused her "significant distress."

## II.  ANALYSIS

### A. Findings of Fact and Recommendations as to Guilt

If the referee's findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee.  *Fla. Bar v. Rush*, 361 So. 3d 796, 801 (Fla. 2023).  Regarding the referee's recommendations as to guilt, "the referee's factual findings must be sufficient under the applicable rules to support the recommendations."  *Fla. Bar v. Mirabal*, 390 So. 3d 1172, 1181 (Fla. 2024) (quoting *Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla. 2018)).  Here, neither party sought review of the referee's findings of fact or recommendation as to guilt of the charged rule violations.  Therefore, the referee's findings of fact are approved along with the referee's recommendation that Watson be found guilty of violating rules 4-8.4(a) and 4-8.4(d).  *See, e.g., Fla. Bar v. Schwartz*, 382 So. 3d 600, 608 (Fla. 2024).

Based upon the above-described conduct, however, the Bar challenges the referee's finding that Watson's conduct constituted "minor misconduct."  Rule 3-5.1(b) expressly addresses the issue and provides in pertinent part as follows:

**(b) Minor Misconduct.** Minor misconduct is the only type of misconduct for which an admonishment is an appropriate disciplinary sanction.

(1) *Criteria.* In the absence of unusual circumstances misconduct will not be regarded as minor if any of the following conditions exist:

. . . .

(B) the misconduct resulted in or is likely to result in actual prejudice (loss of money, legal rights, or valuable property rights) to a client or other person;

(C) the misconduct resulted in or is likely to result in actual or potential injury to the public or the legal system[.] . . .

R. Regulating Fla. Bar 3-5.1(b).

The evidence underlying the rule violations informs the recommendation of whether that misconduct is minor. Here, Watson was involved with her co-counsel/law partner's conduct in accusing opposing counsel of having committed a criminal offense and disparaging her reputation in a public filing. Moreover, as well as being prejudicial toward Kohring, Watson's conduct was prejudicial to the administration of justice as it resulted in motions for sanctions and the need for an evidentiary hearing after the underlying lawsuit had been decided. And though the referee found that Watson was inattentive to the case because she had full-time employment with another firm, that fact does not excuse her failure

to independently inquire into the circumstances behind the filing of the stipulation and her conduct in labeling Kohring's actions as criminal, contacting law enforcement, threatening prosecution, filing a Bar complaint, and seeking sanctions. Watson's reliance upon her co-counsel rather than investigating the matter herself does not negate the egregious nature of the misconduct, and on these facts, we find that Watson's misconduct does not qualify as minor misconduct under rule 3-5.1(b). *See, e.g., Fla. Bar v. Head*, 84 So. 3d 292, 302 (Fla. 2012) (disapproving the finding that the lawyer's dishonest acts constituted minor misconduct, based on the filing of a false affidavit and untruthful testimony during the disciplinary hearing); *Fla. Bar v. Ticktin*, 14 So. 3d 928, 939-40 (Fla. 2009) (disapproving a referee's recommendation of admonishment on the basis that the misconduct caused actual prejudice based on a conflict of interest resulting in a loss of a valuable property ownership); *Fla. Bar v. Kirkpatrick*, 567 So. 2d 1377, 1378-79 (Fla. 1990) (disapproving a private reprimand in favor of a public reprimand based on the gravity of the misconduct that included the

lawyer's arrest and failure to appear in court on several occasions and failure to complete probationary obligations[2]).

## B. Discipline

As we have determined that Watson's violation of rules 4-8.4(a) and 4-8.4(d) does not constitute "minor misconduct," we disapprove the recommendation of admonishment for minor misconduct. R. Regulating Fla. Bar 3-5.1(b) ("Minor misconduct is the only type of misconduct for which an admonishment is an appropriate disciplinary sanction."). Moreover, "[o]ur review of a referee's recommended discipline is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate sanction." *Fla. Bar v. Mirabel*, 390 So. 3d 1172, 1186 (Fla. 2024); *see also* art. V, § 15, Fla. Const. Considering the Standards for Imposing Lawyer Sanctions, the aggravating and mitigating factors supported in this case, and relevant case law, we agree with the Bar that a 91-day rehabilitative suspension is appropriate.

---

2. "A private reprimand is now termed an admonishment . . . ." *Fla. Bar v. Committe*, 916 So. 2d 741, 748 n.3 (Fla. 2005).

The Standards for Imposing Lawyer Sanctions discuss the presumptive sanctions in relation to the misconduct established and are subject to aggravating and mitigating factors and this Court's case law. *See Fla. Bar v. Strems*, 357 So. 3d 77, 90 (Fla. 2022). The referee considered the following Standards: 4.5(b), (c), and (d) (Lack of Competence–Suspension; Public Reprimand; Admonishment, respectively); and 6.3(b), (c), and (d) (Improper Communications with Individuals in the Legal System – Suspension; Public Reprimand; Admonishment, respectively). Because the misconduct at issue is not minor, Standards 4.5(d) and 6.3(d) providing for admonishment are not applicable.

Rather, we find that Standards 6.3(b) and 7.1(b) (Deceptive Conduct or Statements and Unreasonable or Improper Fees - Suspension) apply and that suspension is the presumptive sanction.

Standard 6.3(b) provides that "[s]uspension is appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that the communication is improper and causes injury or potential injury to a party or causes

- 11 -

interference or potential interference with the outcome of the legal proceeding."

Standard 7.1(b) provides that "[s]uspension is appropriate when a lawyer knowingly engages in [deceptive] conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."

Here, the record reflects that Watson knowingly accused Kohring, in a public pleading, of committing a felony by forging her signature in the pretrial stipulation that was filed. Watson did not seek to discuss the matter with Kohring to determine the circumstances behind Watson's electronic signature being included in the filing, and she ignored Kohring's attempts to communicate after the addendum was filed. Further, Kohring testified to the emotional harm caused by the accusation, as well as having to waste time and judicial resources to seek sanctions against Watson and Leigh. Thus, suspension is the presumptive sanction in this case.

We next consider the relevant aggravating and mitigating factors. "Like other factual findings, a referee's findings of mitigation and aggravation carry a presumption of correctness and

will be upheld unless clearly erroneous or without support in the record. A referee's failure to find that an aggravating factor or mitigating factor applies is due the same deference." *Fla. Bar v. Scheinberg,* 129 So. 3d 315, 319 (Fla. 2013) (quoting *Fla. Bar v. Germain,* 957 So. 2d 613, 621 (Fla. 2007)). In addition, "[t]o succeed in challenging a referee's findings of fact, the challenging party must establish there is a lack of evidence in the record to support such findings or that the record clearly contradicts the referee's conclusions." *Fla. Bar v. Horton,* 332 So. 3d 943, 949 (Fla. 2019) (quoting *Fla. Bar v. Glueck,* 985 So. 2d 1052, 1056 (Fla. 2008)). Moreover, "[t]he fact that there is some evidence in the record to support a finding that a[n aggravating] factor might apply does not mean that the referee should have necessarily found it applicable." *Cf. Fla. Bar v. Herman,* 8 So. 3d 1100, 1106 (Fla. 2009) (as applied to the referee not finding a particular mitigating factor).

The referee found three of the aggravators suggested by the Bar, including a pattern of misconduct (Standard 3.2(b)(3)), multiple violations (Standard 3.2(b)(4)), and indifference to making restitution (Standard 3.2(b)(10)). Those findings are not clearly erroneous. In addition, misconduct solely attributable to

- 13 -

co-counsel Leigh was properly found not to be an aggravating factor applicable to Watson. However, the referee clearly erred in not finding the aggravator of substantial experience in the practice of law (Standard 3.2(b)(9)). Contrary to the referee's belief, that factor "is not parsed by expertise in specific areas of the law, but instead applies to experience related to the capability of determining whether conduct is violative of the rules." *Fla. Bar v. Bander*, 361 So. 3d 808, 817 (Fla. 2023). Thus, the fact that this was Watson's first federal civil trial is not determinative. Rather, Watson had been practicing law for six years when the misconduct occurred. *Cf. Fla. Bar v. Nicnick*, 963 So. 2d 219, 222 (Fla. 2007) (aggravating factor of substantial experience in the practice of law applied where misconduct occurred in 2001 and lawyer had been practicing since 1992).

The referee also found the following mitigating factors: absence of a disciplinary record (Standard 3.3(b)(1)); absence of a dishonest or selfish motive (Standard 3.3(b)(2)); character or reputation (Standard 3.3(b)(7)); unreasonable delay in the disciplinary process (Standard 3.3(b)(9)); interim rehabilitation (Standard 3.3(b)(10)); and remorse (Standard 3.3(b)(12)). However, this Court has

disapproved the mitigator of unreasonable delay in the disciplinary process when the referee does not find specific prejudice against the respondent. *See Fla. Bar v. Alters*, 260 So. 3d 72, 83 (Fla. 2018). Because the referee expressly found no prejudice, stating that "no witness was unavailable due to the delay," the finding of the mitigating factor of unreasonable delay is clearly erroneous.

Last, we consider relevant case law on the issue of appropriate discipline, as the sanction must also have a reasonable basis in existing case law. *Fla. Bar v. Grieco*, 389 So. 3d 1257, 1264, (Fla. 2024); *Fla. Bar v. Lecznar*, 690 So. 2d 1284, 1288 (Fla. 1997) (stating that the Court will generally not second-guess a referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions).

The following cases, each involving similar misconduct to various degrees, support a sanction more severe than that recommended by the referee in this case.

In *Florida Bar v. Patterson*, 257 So. 3d 56 (Fla. 2018), the Court imposed a one-year suspension for a violation of rule 4-8.4(d), where the lawyer pursued his own interests in a client's

appeal and made disparaging statements in court filings and in a letter about opposing counsel and judges in the client's case.

A three-year suspension was imposed in *Florida Bar v. Committe*, 136 So. 3d 1111 (Fla. 2014), where the lawyer filed a frivolous complaint asserting slander and tortious interference with a business relationship and then sought criminal prosecution by the United States Attorney in a letter accusing the defendant of attempting to extort money after the defendant requested payment of the awarded attorney's fees. The lawyer's prior disciplinary history as well as misconduct before the referee supported a long rehabilitative suspension.

And in *Florida Bar v. Norkin*, 132 So. 3d 77 (Fla. 2013), the Court imposed a two-year suspension rather than the recommended 90-day suspension, based on the lawyer's disparaging comments against the presiding judge and opposing counsel, and threatened legal action in a correspondence against a senior circuit judge appointed to serve as a provisional director of a corporation that Norkin was representing. The longer suspension was warranted due to the lawyer's repeated misconduct. *See id.* at 91-92.

Further, we reject the referee's reliance on *Florida Bar v. Buckle*, 771 So. 2d 1131 (Fla. 2000), where we reduced a 30-day suspension to a public reprimand for three rule violations pertaining to a disparaging letter sent to a party opponent. *Buckle* was decided more than two decades ago, and involved a private letter, rather than the public filing at issue in this case.

Considering Watson's conduct where she was aware of and co-signed the addendum accusing Kohring of committing forgery, her contact with law enforcement and participation in filing a Bar complaint against Kohring pertaining to the use of Watson's electronic signature, and her responsive pleading before the federal district court repeating the accusation of forgery, we determine that a 91-day suspension is warranted.

## III. CONCLUSION

Accordingly, we approve the referee's findings of fact and recommendations as to guilt and disapprove in part the referee's findings of aggravating and mitigating factors. We disapprove the referee's finding that the conduct involved was minor misconduct and the recommended sanction and instead suspend Watson for 91 days. The suspension will be effective 30 days from the filing of this

opinion so that Watson can close out her practice and protect the interests of existing clients. If Watson notifies this Court in writing that she is no longer practicing and does not need the 30 days to protect existing clients, this Court will enter an order making the suspension effective immediately. Watson shall fully comply with Rule Regulating The Florida Bar 3-5.1(h) and Rule Regulating The Florida Bar 3-6.1, if applicable. Further, Watson shall accept no new business from the date this opinion is filed until she is reinstated.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Danielle Renee Watson in the amount of $3,404.67, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, Mark Lugo Mason, Bar Counsel, The Florida Bar, Tallahassee, Florida,

for Complainant

Scott K. Tozian and Gwendolyn H. Daniel of Smith, Tozian, Daniel & Davis, P.A., Tampa, Florida,

for Respondent