540 So.2d 118 (1989)
THE FLORIDA BAR, Complainant,
v.
William Fenton LANGSTON, Respondent.
No. 67261.
Supreme Court of Florida.
March 16, 1989.
John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel and James N. Watson, Jr., Bar Counsel, Tallahassee, for complainant.
Charles R. Gardner of Gardner, Shelfer & Duggar, P.A., Tallahassee, for respondent.
PER CURIAM.
This Florida Bar disciplinary proceeding is before the Court for consideration of the findings and recommendations of the referee's report. The Florida Bar has filed a petition for review. We have jurisdiction, article V, section 15 of the Florida Constitution, and consider the case pursuant to rule 3-7.6 of the Rules Regulating The Florida Bar.[1]
The referee's report reads in pertinent part:
II. FINDINGS OF FACT
A. Jurisdictional Statement. The Respondent is, and at all times mentioned during this investigation was, a member of the Florida Bar, subject to the jurisdiction and Disciplinary Rules of the Supreme Court of Florida.
B. Narrative Summary of Case. The Complaint filed by The Florida Bar in this matter charges Respondent with violating Disciplinary Rule 1-102(A)(3) which states that a lawyer shall not engage in illegal conduct involving moral turpitude; Disciplinary Rule 1-102(A)(4) which states that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; Disciplinary Rule 1-102(A)(5) which states that a lawyer shall not engage in conduct that is prejudicial to the administration of justice; and Disciplinary Rule 1-102(A)(6) which states that a lawyer shall not engage in any conduct that adversely reflects on his fitness to practice law. All the facts upon which the Complaint is based arise out of a particularly acrimonious dissolution proceeding between Respondent *119 and his former wife, RAMSEY LANGSTON, which commenced in 1981 and concluded in 1983.
Respondent was charged with misconduct regarding four situations arising during these divorce proceedings. The referee makes the following findings of facts in each of those four situations.
1. Beach House. During the Final Hearing in Respondent's divorce case, Respondent was asked by wife's counsel a series of questions relating to Respondent's various places of residence and the expense of those residences since the time of the separation of the parties. Respondent testified that he had resided in a beach house which was marital property for one or two months during the summer of 1981. Wife's counsel then asked him when was the last time he had been at the beach house and Respondent stated in August, 1981. Wife's counsel thanked him and then called a witness who testified that Respondent had been at the beach house just the day before removing personal property from that beach house. The Bar argues that in failing to testify that he had been at the beach house the day before the final hearing, that Respondent perjured himself. The Referee is inclined to give little weight to the impeaching questions, because wife's counsel failed to make the impeaching question particular with respect to time, place and circumstances. Because of the way the impeachment attempt was constructed, it is entirely reasonable to believe that Respondent misunderstood the question. Accordingly, based on the facts and proof adduced at hearing, this charge is not cause to find that Respondent violated the above Disciplinary Rules.
2. Financial Statements. The Bar Complaint charges that Respondent inaccurately represented his financial condition particularly regarding two properties, to financial institutions for the purpose of inducing them to make him a loan. With regard to the Ocala Road Property, the value of which The Bar charges Respondent inaccurately represented, it appears that the bank had more knowledge regarding the property than Respondent had. With regard to the tract of land in Wakulla County, which on the financial statement Respondent represented belonged to him, when in actuality the property belonged to his mother, the Referee finds that Respondent's explanation was plausible and the information given on the financial statement was not intended to mislead the banks nor was it evidence of conclusive dishonesty, fraud, deceit, or misrepresentation. Accordingly, neither charge is cause for finding Respondent guilty of violating the Disciplinary Rules.
3. Contempt of Court. The Bar charges that Respondent violated the aforementioned Disciplinary Rules by his conduct which resulted in the entry of several contempt orders by the Judge presiding over the dissolution proceedings. These Orders were entered because of Respondent's failure to cause property which he had transferred out of his name to be transferred back into his name; for transferring interests in property in violation of the Court's Order not to transfer interests in property; for failure to make Court ordered alimony and child support payments; and, for violating a Court Order not to leave the jurisdiction. Though the Referee does not approve of the overall conduct with regard to Respondent's responses to Court Orders, it is the Referee's conclusion that the Court in the dissolution case entered Orders based upon proposals made by wife's counsel which Orders were obtained through vigorous representation by that counsel. Respondent spent six (6) weeks in jail as a result of those various contempt orders. Respondent is not in contempt of court at this time and has ultimately satisfied all the Orders of the Court. The Referee concludes that though Respondent's actions may not have been correct, Respondent is not by his conduct guilty of violating any of the above Disciplinary Rules.
4. Perjury. The fourth and final foundation for the Bar's charge that Respondent violated the aforementioned *120 Disciplinary Rules concerns testimony at a deposition taken ten days before the final dissolution hearing commenced, wherein Respondent testified that he had not, during the course of his marriage, had sexual relationships with any women other than his wife. Respondent recanted his testimony the next day both verbally and by letter and also recanted the testimony during the final hearing on the dissolution of marriage. Though the Referee understands Respondent's personal reasons for first denying under oath that he had had sexual relationships with anyone other than his wife, the Referee concludes that Respondent did violate a Disciplinary Rule in first testifying under oath that he had not engaged in extra-marital affairs, when in fact he had.
III. RECOMMENDATIONS AS TO GUILT.
I recommend that Respondent be found guilty of violating Disciplinary Rules 1-102(A)(3, 4, 5, and 6) of The Florida Bar.
IV. RECOMMENDATION AS TO DISCIPLINARY MEASURES TO BE APPLIED
I recommend that the Respondent be found guilty of misconduct justifying disciplinary measures, and that he be disciplined by:
A. Private Reprimand.
B. Probation for 12 months or until Respondent shall have furnished satisfactory proof that he has passed the Ethics portion of The Florida Bar Exam, whichever is less time.
C. Payment of costs in these proceedings.
V. PERSONAL HISTORY AND PAST DISCIPLINARY RECORD
Prior to recommending discipline pursuant to Rule 3-7.5(k)(1), I considered the following personal history of Respondent, to-wit:
Date of Birth: March 26, 1943
Date Admitted to the Bar: November 10, 1969
Prior Discipline: None
The Florida Bar challenges the referee's findings of not guilty on II. B.2 and 3 and the recommended discipline. Concerning II. B.2, we are satisfied that there is evidence to support the referee's conclusion that the financial statement was not intended to mislead the bank. Moreover, there is evidence indicating that respondent supplemented the financial statement with additional information and that the bank was not misled. We approve the referee's finding on this point. The Fla. Bar v. Stalnaker, 485 So.2d 815, 816 (Fla. 1986).
The referee's recommended finding of not guilty concerning the charge arising from respondent's contempt of court during his dissolution proceeding stands on a different footing. It is uncontroverted that respondent was held in contempt and was jailed for a period of approximately six weeks until he purged himself. In the final judgment of dissolution and various orders pertaining to this contempt, the trial judge found, inter alia, that despite his ability to do so, respondent failed to pay temporary alimony and child support as ordered by the court and, contrary to the order of the court, had transferred title to various properties as part of "a calculated scheme to defraud his wife of alimony and to prevent an equitable distribution of property of this marriage." These and similar facts of misconduct before the court are not controverted and were accepted by the referee. In our view, respondent's conduct clearly violates Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(3)-(6) and is not excused or satisfactorily explained by virtue of arising in an acrimonious dissolution proceeding where the wife was represented by able counsel. Nor are we impressed by the fact that respondent was jailed until such time as he purged himself of contempt and has not since violated the order of the court.
Based on the conclusion that respondent committed perjury, which he quickly recanted, the referee recommended that respondent be privately reprimanded with a period of probation or satisfactorily completion of the ethics portion of the Florida bar exam. Our scope of review on *121 recommendations for discipline is broader than that afforded to a referee's findings of fact. The Fla. Bar In re Inglis, 471 So.2d 38, 41 (Fla. 1985). Moreover, we have found additional guilt involving misconduct of considerable more weight than that found by the referee. We are also advised that respondent ceased representing clients in 1974 and began developing real estate and constructing rental properties. The Bar urges that respondent be suspended from the practice of law for a period in excess of ninety days. In support, The Bar cites The Fla. Bar v. Hendrickson, 222 So.2d 1 (Fla. 1969), where we imposed a one-year suspension for contemptuously ignoring the orders of a trial judge and section 6.22 of Florida Standards for Imposing Lawyer Sanctions (1986) which recommends suspension when a lawyer knowingly violates a court order thereby frustrating a legal proceeding. Respondent argues that the misconduct occurred more than six years ago, 1982, and, since then, respondent has begun to establish credit and rebuild his business following bankruptcy. In view of the seriousness of respondent's contemptuous conduct, which is particularly egregious for a lawyer, and the fact that he has not practiced law for approximately fourteen years, we consider it advisable, in the interest of the public, to suspend respondent from the practice of law and to impose as a condition of reinstatement that he successfully pass the ethics part of the Florida bar exam. Accordingly, we suspend respondent from the practice of law for a period of ninety-one days. Reinstatement is contingent upon successfully passing the ethics portion of the Florida bar exam. Respondent shall have thirty days to close his practice in an orderly fashion and protect the interests of his clients; the suspension shall take effect April 17, 1989. As provided by rule 3-5.1(h) of the Rules Regulating The Florida Bar, respondent shall provide notice of his suspension to his clients and shall accept no new clients from the date of this order until reinstated.
The costs of these proceedings are taxed against respondent and judgment is entered in the amount of $963.80, for which sum let execution issue.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The Florida Bar's complaint and referee's report were based on the former Integration Rule and Florida Bar Code of Professional Responsibility.